[Sac. No. 5207. In Bank.—August 31, 1938.]

CHARLOTTE GABRIELLI, a Minor, etc., Respondent, v. DOROTHY C. KNICKERBOCKER et al., Appellants.

Otis D. Babcock, District Attorney, and William A. Green, Assistant District Attorney, for Appellants.

Wayne M. Collins for Respondent.

SEAWELL, J.—Charlotte Gabrielli, a minor nine years of age and a former student of the Fremont School, a public school in the elementary grades in the city of Sacramento, applied through her guardian *ad litem* to the Superior Court in Sacramento County for a writ of mandate addressed to the authorities of the Fremont School and the Superintendent

of Schools and Board of Education of the City of Sacramento School District to compel her reinstatement as a pupil of the Fremont School. She had been expelled by the respondent authorities for persistent refusal to participate in a ceremony of saluting and pledging allegiance to the flag of the United States. Her refusal was based upon the ground of religious objection to the ceremony. The respondents have appealed from a judgment directing the issuance of the peremptory writ.

The essential facts have been agreed upon. Petitioner and her father and guardian *ad litem*, Joseph Gabrielli, are citizens of the United States and reside in the city of Sacramento school district. Petitioner was duly and regularly admitted to and was in attendance upon the Fremont School until her expulsion, which was for the sole reason that she refused to salute the flag of the United States and pledge allegiance thereto, although she was willing to stand quietly and respectfully during the performance of the ceremony by the other children. Participation in this ceremony is required of all students in public elementary schools in the city of Sacramento, although in some of the public schools of elementary grades in the county of Sacramento compliance is not required of students who have religious objections thereto. Petitioner and her father are members of a religious organization known as "Jehovah's Witnesses", which teaches that the saluting of and the pledge of allegiance to the flag and government of the United States constitute a form of idolatry and the ascription of spiritual powers of salvation to a man-made symbol and are forbidden by the Bible; hence such acts imperil the salvation of the participant. There is no suggestion that petitioner's objections are not made in good faith.

In support of her contention that she has been illegally excluded from the Fremont School petitioner argues that her expulsion has deprived her of her right to attend the public schools without due process of law (in violation of amend. XIV, sec. 1, Fed. Const., and art. I, sec. 13, Cal. Const.); that it constitutes a denial of the religious liberty guaranteed to petitioner by the California Constitution (art. I, sec. 4) and protected by Amendment XIV, section 1, of the Constitution of the United States; and, finally, that it is a denial to petitioner of the equal protection of the laws, forbidden

by both state and federal Constitutions. (Cal. Const., art. I, secs. 11 and 21; U. S. Const., amend. XIV, sec. 1.)

Since the judgment of the trial court in the instant case the Supreme Court of the United States has twice dismissed appeals taken from state court judgments upholding the validity of regulations requiring the salute and pledge of allegiance to the flag as applied to pupils objecting on religious grounds. (*Leoles* v. *Landers*, 302 U. S. 656 [58 Sup. Ct. 364, 82 L. Ed. 507] ; *Hering* v. *State Board of Education of New Jersey*, 303 U. S. 624 [58 Sup. Ct. 752, 82 L. Ed. 1087].) In view of these decisions it cannot be held that application of the regulation requiring the salute to the flag to members of the group known as Jehovah's Witnesses is in violation of rights guaranteed by the federal Constitution. In dismissing the appeal taken from the judgment of the Supreme Court of Georgia in *Leoles* v. *Landers*, 184 Ga. 580 [192 S. E. 218], the Supreme Court of the United States rendered the following decision:

"PER CURIAM. The motion of the appellees to dismiss the appeal is granted, and the appeal is dismissed for want of a substantial federal question. (*Coale* v. *Pearson*, 290 U. S. 587 [54 S. Ct. 131, 78 L. Ed. 525] ; *Hamilton* v. *Regents of University of California*, 293 U. S. 245, 261, 262 [55 S. Ct. 197, 203, 79 L. Ed. 343].)" (*Leoles* v. *Landers*, 302 U. S. 656 [58 Sup. Ct. 364, 82 L. Ed. 507].)

A similar decision was rendered in dismissing an appeal (*Hering* v. *State Board of Education, etc., supra*) from the judgment of the Court of Errors and Appeals of New Jersey in *Hering* v. *State Board of Education of New Jersey*, 117 N. J. L. 455 [189 Atl. 629] ; Id., 118 N. J. L. 566 [194 Atl. 177]. The court cited in *Leoles* v. *Landers*, 302 U. S. 656 [58 Sup. Ct. 364, 82 L. Ed. 507]. In *Nicholls* v. *Mayor and School Committee of Lynn*, (Mass.) [7 N. E. (2d) 577, 110 A. L. R. 577], and *People* v. *Sandstrom*, 167 Misc. 436 [3 N. Y. Supp. (2d) 1006], state courts upheld the requirement of saluting the flag as applied to pupils objecting on religious grounds. (*Contra, Gobitis* v. *Minersville School Dist.*, 21 Fed. Supp. 581.)

By reason of the above decisions of the Supreme Court of the United States the question as to whether the flag saluting requirement violates the due process clause of the Four-

teenth Amendment to the federal Constitution, or any other provision of the federal Constitution, is no longer open. The due process clause of the Fourteenth Amendment to the federal Constitution and the due process clause of the state Constitution (art. I, sec. 13) both prohibit the state from depriving any person "of life, liberty, or property without due process of law", which provisions are claimed to have been violated in the instant case. ■ State courts in interpreting provisions of the state Constitution are not necessarily concluded by an interpretation placed on similar provisions in the federal Constitution. (*Sperry & Hutchinson Co.* v. *State*, 188 Ind. 173 [122 N. E. 584, 587]; *People* v. *Budd*, 117 N. Y. 1 [22 N. E. 670, 674, 15 Am. St. Rep. 460, 5 L. R. A. 559]; *Watson* v. *State*, 109 Neb. 43 [189 N. W. 620, 621]; *State of New Mexico* v. *Henry*, 37 N. M. 536 [25 Pac. (2d) 204, 207, 90 A. L. R. 805]; 11 Am. Jur., sec. 105, p. 741; 12 Am. Jur. 259.) But these decisions declare that cogent reasons must exist before a state court in construing a provision of the state Constitution will depart from the construction placed by the Supreme Court of the United States on a similar provision in the federal Constitution.

■ In addition to the due process clause, our state Constitution contains an express guaranty of freedom of religion (art. I, sec. 4). The federal Constitution does not contain a similar express provision protecting "religious" liberty from encroachment by state action. However, the absence of such an express provision does not weaken the force of the federal court decisions, *supra,* as indicating the rule to be applied in the instant case, for religious liberty is included within the "liberty" protected by the due process clause of the Fourteenth Amendment. (*Hamilton* v. *Regents of the University of California,* 293 U. S. 245 [55 Sup. Ct. 197, 79 L. Ed. 343].) In the cited case, the court upheld a regulation that students at the state university take a course in military science and tactics as applied to petitioners, who objected to enrollment in such a course on religious grounds.

It must be accepted as a postulate, by reason of the subject matter involved in the dismissal of the above cited appeals, that every argument relied upon in the instant case,

both for and against the power of appellant board to enforce its action of expulsion as an asserted violation of the religious freedom clause of the federal Constitution, and every argument and reason urged in the many decided cases of the several courts of the country in which the precise question was presented with respect to the violation of said religious freedom clause, came to the cognizance of the United States Supreme Court and was duly weighed by it in the process of reaching the conclusion that no substantial federal question was involved in said appealed cases. The action taken by said court in disposing of said appeals cannot be taken in any other sense than that no violation of respondent's constitutional right in the instant case has been committed by the act of excluding respondent from attendance at said public school until she shall comply with the rule which she refuses to obey.

We are further of the view that the United States Supreme Court, before making its orders of dismissal, had in mind the principles which were previously enunciated in *Davis* v. *Beason*, 133 U. S. 333, 342 [10 Sup. Ct. 299, 33 L. Ed. 637], a searching and exhaustive review of the question before us, from which we make the following brief quotation

"The term 'religion' has reference to one's views of his relations to his Creator, and to the obligations they impose of reverence for his being and character, and of obedience to his will. It is often confounded with the *cultus* or form of worship of a particular sect, but is distinguishable from the latter. . . . With man's relations to his Maker and the obligations he may think they impose, and the manner in which an expression shall be made by him of his belief on those subjects, no interference can be permitted, provided always the laws of society, designed to secure its peace and prosperity, and the morals of its people, are not interfered with."

To the same end may be cited the earlier case of *Reynolds* v. *United States*, 98 U. S. 145 [25 L. Ed. 244], and *Hamilton* v. *Regents, etc., supra,* as furnishing further reasons supporting the action of dismissal. The decision in the Reynolds case points out the omission of the Constitution to define the word "religion". In answering its own question as to what is meant by the religious freedom guaranteed by the Constitution, the court reverts to Mr. Jefferson's com-

ment made at the time of the adoption of the first amendment to the federal Constitution, whereby the Congress was forbidden to make any law "respecting an establishment of religion or prohibiting the free exercise thereof". The decision incorporates Mr. Jefferson's comment as an aid to the interpretation of the meaning of said clause, phrased in the following words:

" . . . I shall see with sincere satisfaction the progress of those sentiments which tend to restore man to all his natural rights, convinced he has no natural right in opposition to his social duties."

The paragraph concludes in these words:

"Coming as this does from an acknowledged leader of the advocates of the measure, [Jefferson] it may be accepted almost as an authoritative declaration of the scope and effect of the amendment thus secured. Congress was deprived of all legislative power over mere opinion, but was left free to reach actions which were in violation of social duties or subversive of good order."

■ Giving due consideration to the precise constitutional question presented in the cases from which the appeals were taken and the historical background upon which are marked by the supreme law of the nation the limits beyond which the field of religious freedom may not be invaded by unwarranted encroachments of state, it clearly appears that the exactions by the state of social and patriotic duties of the citizens and such other civic duties as may have reasonable relations to the maintenance of good order, safety and the public welfare of the nation, may not be interpreted as infringements of the religious freedom clauses of either the state or federal organic law. We are, therefore, of the view that the rule prescribed by the board does not abridge any of petitioner's constitutional rights by excluding her from attendance at the Sacramento city public school until such time as she shall comply with the rule which she refuses to obey.

■ The legislature has conferred upon school boards broad plenary powers to make all reasonable regulations that will in the reasonable exercise of judgment promote the efficiency of the school system in performing public welfare duties, which are limited not merely to the development of the mind in academic fields, but the sphere of which is much broader and extends to those subjects which will tend to

develop and quicken the civic conscience in ways of attachment for home and country. It is only where its regulations are clearly shown to be in violation of the fundamental law that the courts, even though entertaining a different opinion from that of the governing boards as to the wisdom or expediency of adopting social regulations, may annul them. Many authorities may be cited sustaining the action of school boards in matters in which the wisdom of the board's action may be so highly controversial that reasonable minds might well be divided as to the wisdom of the board's action. In such cases, its action is conclusive.

 We see no violation of any article of the federal or state Constitutions in its exercise of power in the instant case. The training of school children in good citizenship, patriotism and loyalty to state and nation is regarded by the law of the state as a means of protecting public welfare and is directed by the school code of the state. (Sec. 5.544.) The simple salutation to the flag and the repetition of the pledge of allegiance, in the judgment of the proper governing body, tend to stimulate in the minds of youth in the formative period of life sentiments of lasting affection and respect for and unfaltering loyalty to our government and its institutions.

The judgment is reversed and the writ is discharged.

Waste, C. J., Curtis, J., Langdon, J., Edmonds, J., Houser, J., and Shenk, J., concurred.

Rehearing denied. Houser, J., voted for a rehearing.