[Crim. No. 17643. In Bank. Aug. 6, 1975.]

THE PEOPLE, Plaintiff and Appellant, v.
JACK LEE NORMAN, Defendant and Respondent.

930

## COUNSEL

Joseph P. Busch, District Attorney, Harry B. Sondheim, Donald J. Kaplan, Robert J. Lord and Jay J. Becker, Deputy District Attorneys, for Plaintiff and Appellant.

Cecil Hicks, District Attorney (Orange), Michael Capizzi, Assistant District Attorney, and Oretta D. Sears, Deputy District Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

Richard S. Buckley, Public Defender, Harold E. Shabo, Dennis A. Fischer and A. Jane Fulton, Deputy Public Defenders, for Defendant and Respondent.

## OPINION

**WRIGHT, C. J.**—The People appeal from an order granting a motion to set aside an information on grounds that the only material evidence of charged narcotics violations was seized as the result of an illegal search. (Pen. Code, § 995.) Defendant first moved at the preliminary hearing to suppress evidence on the grounds of the illegal search and seizure. (Pen. Code, § 1538.5.) The magistrate denied that motion and held defendant to answer on charges of violating Health and Safety Code sections 11910 (possession of a restricted dangerous drug) and 11350 (possession of marijuana). The motion to set aside the information was submitted to the trial court on the transcript of the preliminary hearing.

Since there is no substantial evidence in support of a contrary conclusion (see *Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23]), we conclude that the evidence was obtained by means of an unreasonable search and seizure in violation of article I, section 13, of the California Constitution and that the information was properly set aside.

On February 28, 1973, at 3:55 a.m., Officer Repp was parked in his patrol car when he observed defendant driving a Volkswagen van with the headlights off. While still parked, Officer Repp directed the patrol car spotlight onto the van and the defendant "gave [Repp] a rude gesture with his finger and continued southbound." Repp activated the police vehicle's emergency lights and pursued defendant at approximately 45 miles per hour. Defendant made a left turn against a red light, ran a stop sign, and finally stopped the van.

Officer Repp stopped the patrol car behind the van, alighted and approached it. Defendant "stuck his head out the driver's window and said 'Fuck you, cop' and drove off." Repp returned to his car and again pursued the van at 45 to 50 miles per hour[1] and again forced it to a stop.[2] Repp left his vehicle and approached the van with his gun drawn just as a second patrol car driven by Officer Cobb arrived at the scene. Cobb left his car and also approached the van. Simultaneously, defendant stepped out of the van. He was holding a black cylindrical object in his hand which appeared to Officer Repp to be a gun.[3] ■ Repp pointed his revolver at defendant and ordered him "to either drop it [the black object] or die." With a "wrist flip," defendant threw the object under the van; it landed on the pavement one or two feet in front of the left rear wheel.[4]

Both officers saw the object as it fell to the ground. Cobb testified that "I realized that it wasn't a gun because it didn't make any noise when it hit [the pavement]." Repp then said to Cobb, "He threw it over there. He had something in his hand and he threw it." Cobb responded that he had seen the object thrown. However, before he could retrieve it Repp arrested defendant and a female passenger and placed them in handcuffs. The record is silent as to the reason for the arrest. Cobb then picked up the object, which was a black plastic tobacco pouch five inches wide and four inches deep and brought the pouch to Repp. One or both of the officers opened the pouch and found .2 grams of marijuana, 20 seconal pills and cigarette papers. The record is silent as to why the officers opened the pouch. The pouch and its contents are the evidence which is the subject of defendant's motions.

---

[1]Officer Repp testified at the preliminary hearing that defendant "was driving rather slow for a pursuit."

[2]Officer Repp testified that he forced defendant to stop because he was driving without lights and *not* because he had made an obscene gesture or had said "Fuck you, cop."

[3]Officer Cobb testified that the object "resembled a gun."

[4]The officers were standing approximately 32 feet from defendant when they ordered him to drop the object. The lighting conditions were described by Repp as "very good" and by Cobb as "extremely good."

*Warrantless Search of Tobacco Pouch*[5]

The burden of justifying the warrantless search in the case at bar rests with the prosecution. (*Badillo v. Superior Court, supra,* 46 Cal.2d 269, 272.) Neither officer offered justification at the preliminary hearing for the search of the tobacco pouch. The magistrate ruled the search was justified because defendant's attempt to flee after violating traffic laws gave "rise to a reasonable inference that there was something he was trying to hide." As will be seen, the record furnishes support for neither the magistrate's ruling nor a related argument that the defendant's "furtive" attempt to conceal the tobacco pouch by throwing it under the van justified the search.

In *People v. Superior Court (Kiefer)* (1970) 3 Cal.3d 807, 817 [91 Cal.Rptr. 729, 478 P.2d 449], we noted when the occupant of a vehicle makes certain "furtive movements" such movements might establish probable cause for a contraband search if the police officer "may reasonably *infer* from the timing and direction of the occupant's movements that the latter is in fact in possession of contraband which he is endeavoring to hide." *(Id.)* We stated there were specific instances where such gestures "could reasonably be given a guilty connotation from prior reliable information or from the officer's personal observation of contraband or from a deliberate act of concealment under otherwise suspicious circumstances." *(Id.,* at pp. 819-820.) In the case at bar the "furtive gesture" or concealment justification is unpersuasive. The gesture of throwing the object under the van cannot be characterized as "furtive" when it was the result of a police order to "drop it or die." Moreover, the officers could not reasonably believe under the circumstances that defendant was attempting to conceal the object. The fact that in complying with the order he flipped the object under the van at the well-lit roadside scene cannot, by itself, establish probable cause to believe the defendant sought to hide contraband.[6] Since there had been no information communicated to the officers concerning contraband and they did not personally observe contraband the People cannot rely upon those grounds for attaching significance to the act of throwing the object under the vehicle. *(Id.,* at pp. 819-820.)

---

[5]No claim is made here that the pouch itself is evidence of any criminal conduct and, as such, may be seized and the contents investigated without infringing constitutional proscriptions relative to searches. (See *Guidi v. Superior Court* (1973) 10 Cal.3d 1 [109 Cal.Rptr. 684, 513 P.2d 908].)

[6]Although the record shows that when the defendant threw the pouch under the van, Officer Repp said to Officer Cobb, "He threw it over there. He had something in his hand and he threw it," neither officer asserted that the remark was indicative of a suspicion that defendant was attempting to hide the object; furthermore, neither officer testified to harboring any suspicion of concealment, irrespective of Officer Repp's quoted remark.

There is likewise no support in the record for the magistrate's conclusion that because defendant violated traffic laws and fled from the scene of the first stop by the police officer, the officers reasonably inferred that there was something that defendant sought to conceal. Even if we assume that Officer Repp stopped defendant for fleeing the scene or for other traffic violations committed during the flight, there is no record evidence that either officer suspected defendant possessed contraband and stopped him on such suspicion.

### Custodial Justification for Search

Although we reject the "furtive gesture" or concealment justification we must determine the nature of the custody in the present case in order to decide if the search of the pouch was within the permissible scope necessitated, in a weapons search, by the relative danger to police officers incident to such custody. (*People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d 807; *People* v. *Superior Court (Simon)* (1972) 7 Cal.3d 186 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People* v. *Brisendine* (1975) 13 Cal.3d 528 [119 Cal.Rptr. 315, 531 P.2d 1099].) Initially, we note the record does not expressly disclose the particular grounds upon which defendant and his passenger were arrested and handcuffed. However, Officer Repp testified that the second stop was made solely because defendant was driving without headlights and not because of the obscene gesture, epithets, traffic infractions committed by defendant or failure to stop during the pursuit. Since the record offers no guidance, we can speculate that because defendant was arrested and handcuffed, the officers, at that time, intended to take him before a magistrate. However, of the violations committed by defendant, only that of evading arrest (see Veh. Code, §§ 2800, 40303, subd. (i)) would have permitted the officers to bring defendant before a magistrate.[7]

Even if we assume that defendant was arrested for evading arrest, the officers could have either prepared a written notice to appear (i.e., a citation or "ticket") and released defendant "forthwith" after he promised to appear as directed, or they could have taken defendant "without unnecessary delay" before the "nearest or most accessible" magistrate of competent jurisdiction. (*People* v. *Superior Court (Simon), supra,* 7 Cal.3d 186, 199.) The officer apparently intended to exercise the latter option. We must, therefore, determine whether the search of the

[7]The People are in accord. They assert that defendant "engaged in conduct which could only be deemed as indicative of an attempt to evade arrest." The magistrate also stated that after violating traffic laws defendant "fled from the scene of the first stop by the police officer."

pouch was within the permissible scope of a search incident to such an arrest. We conclude, for reasons which follow, that the search exceeded permissible limits and was thus unlawful.

With respect to a search of the driver after a traffic violation, *Simon* reiterated our position in *Kiefer* that when there is independent probable cause " 'It is now settled that as an incident to a lawful arrest, a warrantless search limited both as to time [citation] and place [citation] may be made (1) for instrumentalities used to commit the crime, the fruits of that crime, and other evidence thereof which will aid in the apprehension or conviction of the criminal; (2) for articles the possession of which is itself unlawful, such as contraband or goods known to be stolen; and (3) for weapons which can be used to assault the arresting officer or to effect an escape.' " (7 Cal.3d 186, 201.) In the case at bar, there is no evidence establishing independent probable cause to search for instrumentalities of any crime. Furthermore, as we noted in our discussion of the warrantless search of the pouch, we are unable to discover any evidence which would justify a search for contraband. Therefore, the search of the pouch can be justified, if at all, only as a weapons search incident to the arrest.

We stated in *Kiefer* with reference to the vehicle search for weapons that "Just as the arresting officer in an ordinary traffic violation case cannot reasonably expect to find contraband in the offender's vehicle, so also he cannot expect to find weapons. To allow the police to routinely search for weapons in all such instances would likewise constitute an 'intolerable and unreasonable' intrusion into the privacy of the vast majority of peaceable citizens who travel by automobile. ■ It follows that a warrantless search for weapons, like a search for contraband, must be predicated in traffic violation cases on specific facts giving the officer reasonable grounds to believe that such weapons are present in the vehicle he has stopped." (3 Cal.3d at p. 829.) We reaffirmed this position in *Simon* with respect to a search of the driver for weapons. (7 Cal.3d at p. 206.) Furthermore, a concurring opinion in *Simon* urged the propriety of a pat-down search "in those instances when traffic law violators are transported to a magistrate pursuant to the provisions of Vehicle Code sections 40302 or 40303." (7 Cal.3d at p. 214.) Although the majority in *Simon* did not reach that issue, this court has now adopted that view in *People* v. *Brisendine, supra,* 13 Cal.3d 528, 537-538.

*Brisendine* involved the scope of a search incident to the issuance of a mere citation when "the exigencies of the situation require that officers

travel in close proximity with arrestees." (*Id.,* at p. 537.) We concluded that a pat-down search of the arrestee's person and certain personal effects, including a knapsack, at a primitive nighttime campsite was permissible. However, we also held that an opaque plastic bottle which was found in a knapsack and which obviously did not contain a weapon could not be opened since such an intrusion was unnecessary for the officer's protection. (*Id.,* at p. 545; see also *People* v. *Mosher* (1969) 1 Cal.3d 379, 394 [82 Cal.Rptr. 379, 461 P.2d 659].)

*Simon, Kiefer* and *Brisendine* provide compelling guidance for disposing of the present case. The search of the tobacco pouch was almost identical to the search of the opaque bottle in *Brisendine.* Both searches were of an arrestee's personal effects at the scene where the arrestee was being placed in custody. We note also that the instant search is very similar to those in *Simon* and *Kiefer,* although the pouch was neither on the arrestee's person nor in the vehicle, but was rather under the vehicle. Nonetheless, we conclude that in determining the permissible scope of a search incident to a traffic arrest, where there is probable cause to believe weapons will be found, there is no meaningful distinction between searches of the arrestee, the vehicle, and objects that are or were in the arrestee's immediate control or possession, such as the tobacco pouch dropped under the van by the defendant in the instant case.

Having determined that *Kiefer, Simon* and *Brisendine* authorize a search of personal effects for weapons after a traffic violation arrest where probable cause for such a search is established, we conclude for the following reasons that the record in the instant case does not establish the existence of such probable cause.

Officers Repp and Cobb both stated at the preliminary hearing that the black cylindrical object held by defendant when he alighted from the van resembled a gun. Although lighting conditions at the scene were very good, the officers were standing some 30 feet from the defendant at the time of their observations and they could have reasonably believed the object was a weapon. However, Cobb testified that when defendant dropped the object pursuant to Repp's command, he "realized that it wasn't a gun because it didn't make any noise when it hit [the pavement]." The record is silent as to Repp's reaction to the absence of sound when the object was dropped. Since Cobb knew no weapon was in the pouch we are simply not presented with facts supporting probable cause to conduct a weapons search. Furthermore, if, after the pouch was discarded, Cobb still entertained any doubts, the

absence of probable cause was certainly established when he picked up the soft pouch and thus confirmed his previous conclusion that the pouch did not contain a weapon. (See *People* v. *Brisendine, supra,* 13 Cal.3d 528, 545; see also *People* v. *Collins* (1970) 1 Cal.3d 658, 663 [83 Cal.Rptr. 179, 463 P.2d 403]; *People* v. *Mosher* (1969) 1 Cal.3d 379, 394 [82 Cal.Rptr. 379, 461 P.2d 659]; *Amacher* v. *Superior Court* (1969) 1 Cal.App.3d 150 [81 Cal.Rptr. 558].)

■ We reiterate that the People have the burden of justifying the warrantless search. The evidence presented at the preliminary hearing, which constituted the only evidence in the case, offers no justification for the search.[8]

---

[8]The People further assert that we should reconsider *Simon* in light of a statutory scheme for the posting of bail which was adopted subsequent to *Simon*. (See Veh. Code, § 40307; Pen. Code, §§ 853.6, 1269b.) They maintain that in light of new statutory bail procedures there is no difference between Vehicle Code arrestees and Penal Code misdemeanor arrestees for bail release purposes. (See Pen. Code, § 1295.) They argue, therefore, that the distinction which *Simon* drew between such arrestees has ceased to exist and can no longer constitute a basis for differentiating between the scope of a search incident to a Vehicle Code arrest and a Penal Code misdemeanor arrest. The argument is untenable for three reasons. First, Vehicle Code section 40307 does not change procedures for releasing traffic arrestees except in situations where the "magistrate or the person authorized to act for him is *not available*." (Italics added.) Aside from the fact that there is no evidence of the magistrate's unavailability in the present case, the mere possibility of such unavailability in any particular case cannot justify a broader scope of search, absent independent probable cause. Second, both *Simon* and *Kiefer* predicated their holdings restricting the scope of a search incident to an arrest for a traffic violation upon the expectation of privacy of the "vast majority of peaceable citizens who travel by automobile." (*People* v. *Superior Court (Simon), supra,* 7 Cal.3d 186, 206.) We concluded in both cases that absent "specific facts or circumstances giving the officer reasonable grounds to believe" weapons are present in the car or on the arrestee's person, the driver's expectation of privacy outweighed any need to search for the officer's protection. *(Id.)* *Simon* indeed noted that when a driver is taken into custody for a violation described by Vehicle Code section 40302 or section 40303, he must be taken directly to a magistrate and immediately released on bail or written promise to appear. The arrestee could not be subjected to the routine booking process used for nontraffic misdemeanants. *(Id.,* at p. 209.) *Kiefer* and *Simon* thus recognized that since no booking search would be made, no on-the-scene search could be justified absent independent probable cause. Assuming that Vehicle Code section 40307 would authorize booking prior to release on bail for the instant violation when the magistrate is unavailable, we believe *Simon* and *Kiefer* would nonetheless continue to control since the *initial* expectation of privacy of the automobile operator with which those cases were concerned remains unchanged. Third, *Brisendine* adopts the concurring view in *Simon* and holds that a pat-down search of an arrestee for weapons is permissible when the arrestee is to be transported by patrol car. We stated in *Brisendine* that such a pat-down will fully protect police officers from the danger of weapons being secreted in the patrol car. Since we reaffirm in the present case that a search for weapons can also be made where there are independent circumstances providing probable cause, we are not persuaded by the argument that the changes in the bail release process necessitate additional protective measures.

We are sensitive to "the dangers daily faced by the men **who** have the burden of policing our streets and highways, and of the fact that even a minor . . . citation incident can occasionally erupt into violence." (*People v. Superior Court (Kiefer), supra,* 3 Cal.3d at p. 829.) As has often been stated, there is "no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." (*Terry* v. *Ohio* (1968) 392 U.S. 1, 20-21 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868].) The record in the case at bar not only reveals no evidence that would lead the officers to believe the tobacco pouch contained a weapon, but also affirmatively discloses that the officers believed it did not contain a weapon. ▮▮ Accordingly, we hold the evidence was illegally seized in violation of article I, section 13, of the California Constitution.

### *Application of Federal Constitutional Limitations on Search*

As in *Brisendine,* the People contend the present case should be controlled by *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467] and *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488]. We noted in *Brisendine* that had the *Robinson* or *Gustafson* traffic arrests occurred in California, "the officer would have been limited to a pat-down prior to transporting the defendant in the patrol vehicle [citation]."[9] (*People* v. *Brisendine, supra,* 13 Cal.3d 528, 546.) However, the United States Supreme Court did not impose such a limited intrusion and held that "The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." (414 U.S. at p. 235 [38 L.Ed.2d at pp. 440-441].)

---

[9]The defendant in *Robinson* was arrested for driving a motor vehicle after his driver's license had been revoked. In *Gustafson* the defendant was arrested for failure to have his operator's license in his possession. In both cases, contraband was found during full field searches incident to the arrests.

Our bases for rejecting the *Robinson/Gustafson* rule were stated in *Brisendine.* They included both a differing interpretation from that of the United States Supreme Court of the "legitimate concern of police officers in insuring that the suspect is unarmed" and our reaffirmation of the state's power to impose a higher constitutional standard for searches and seizures based upon the California Constitution. (*People v. Brisendine, supra,* 13 Cal.3d 528, 548-552; see also *Cooper v. California* (1967) 386 U.S. 58, 62 [17 L.Ed.2d 730, 734, 87 S.Ct. 788]; *Jankovich v. Toll Road Comm'n.* (1965) 379 U.S. 487, 491-492 [13 L.Ed.2d 439, 442-443, 85 S.Ct. 493]; *People v. Martin* (1955) 45 Cal.2d 755, 759-761 [290 P.2d 855]; *Kaplan v. Superior Court* (1971) 6 Cal.3d 150, 155 [98 Cal.Rptr. 649, 491 P.2d 1].)

■ We adhere to the *Brisendine* rationale and decline to depart from our holding that upon an arrest for a violation of the Vehicle Code made pursuant to section 40302 or 40303, the permissible scope of a weapons search extends to a pat-down of the arrestee, a search of the vehicle, or a search of objects in the arrestee's possession only where there is probable cause to believe such weapons may be found therein. Furthermore, a pat-down search of the arrestee for weapons is always permissible *if he is to be transported in a patrol car.*[10]

As we have concluded the custody in the instant case could only have been for a violation of Vehicle Code section 2800 (see Veh. Code, § 40303, subdivision (i)), and there was no evidence providing probable cause to believe the tobacco pouch searched by the officers contained a weapon, the seizure of such was unlawful and the evidence could not be received over defendant's objection. Because there is no competent evidence sufficient to hold defendant to answer for the crimes charged he was committed without probable cause. (Pen. Code, § 995.)

The order is affirmed.

Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

[10]The people of this sovereign state have directed that we give a meaning to constitutionally guaranteed rights which is independent of limits fixed by the United States Supreme Court as applicable to parallel rights guaranteed by the United States Constitution. Article I, section 24 of the California Constitution thus declares that "Rights guaranteed by this Constitution are not dependent upon those guaranteed by the United States Constitution." Such declaration of constitutional independence was adopted by the voters at the November 1974 election as a reaffirmation of existing law. (See *People v. Brisendine, supra,* 13 Cal.3d 528, 551.) The opinion of the Court of Appeal in this case, now a nullity but nevertheless quoted from at length in the dissenting

**RICHARDSON, J.**—I concur in the judgment. Although the case is quite close, on balance I agree that defendant's conduct did not furnish probable cause to believe that the object discarded by defendant contained contraband. I do not agree, however, with the majority's reaffirmation of its holding in *People* v. *Brisendine* (1975) 13 Cal.3d 528, 548-552 [119 Cal.Rptr. 315, 531 P.2d 1099] to the effect that article I, section 13, of our state Constitution, which is essentially identical in wording with the Fourth Amendment of the federal Constitution, imposes a different and higher standard of reasonableness than that enunciated by the United States Supreme Court with respect to the Fourth Amendment (*United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467]; *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488]). For reasons well stated by Justice Burke in the *Brisendine* dissent, those decisions by the United States Supreme Court are highly persuasive as to the standard of reasonableness imposed by article I, section 13, and should be followed.

**CLARK, J.**—I dissent. I would uphold the search under *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467] and *Gustafson* v. *Florida* (1973) 414 U.S. 260 [38 L.Ed.2d 456, 94 S.Ct. 488], for the reasons so well expressed by Justice Thompson for the Court of Appeal in this case. The pertinent portion of his incisive opinion, otherwise lost by our having granted hearing, is set forth below.[1]

"The Fourth Amendment to the United States Constitution and article I, section 19 [now section 13] of the California Constitution are essentially identical in wording. [Fn. omitted.] Decisions of the United

---

opinion, was rendered some nine months prior to the adoption of the direction embodied in article I, section 24 requiring us to give independent meaning to our constitutionally guaranteed rights.

[1]Previewing this dissent, the majority notes that Justice Thompson's opinion is "now a nullity." (*Ante,* p. 939, fn. 10) True, by granting hearing, this court nullified the opinion as judgment or authority. (*Ponce* v. *Marr* (1956) 47 Cal.2d 159, 161 [301 P.2d 837].) However, its persuasive appeal in a divided field of current legal concern is undiminished. (A bare majority voted to grant and transfer this cause to this court, McComb, Burke, and Clark, JJ., voting to deny; see concurring opinion of Richardson, J., *ante.*) Further, the practice of adopting the opinion below as a dissent is well-established in our court. (See, e.g., *Crockett* v. *Superior Court* (1975) 14 Cal.3d 433, 442-447 [121 Cal.Rptr. 457, 535 P.2d 321] (Mosk, J., dissenting).) Indeed, a nullified opinion is sometimes resurrected by the majority. (See *People* v. *Reyes* (1974) 12 Cal.3d 486, 500-507 [116 Cal.Rptr. 217, 526 P.2d 225].)

Perhaps out of excessive bicentennial spirit, the majority refers to article 1, section 24 of the California Constitution as a "declaration of constitutional independence." (*Ante,* p. 939, fn. 10.) However, as the majority later admits, adoption of section 24 resulted in nothing more than a "reaffirmation of existing law." *(Id.)* Therefore, it is insignificant that Justice Thompson's opinion was rendered prior to the adoption of the section.

States Supreme Court construing constitutional phraseology are highly persuasive. (*Gabrielli* v. *Knickerbocker,* 12 Cal.2d 85, 89 [82 P.2d 391]; *Cohen* v. *Superior Court,* 173 Cal.App.2d 61, 67 [343 P.2d 286]; 21 C.J.S., Courts, § 205, fns. 17 and 18, and cases there cited.) By the nature of federal and state jurisdiction, that court has acquired a degree of expertise not shared by any state court. Matters of constitutional import are likely to reach the United States high court on a cleaner record and to be better briefed than are similar issues in the state system. The persuasion of the United States Supreme Court decisions is particularly strong in the area of search and seizure and the exclusionary rule. California courts have for years spoken of the basis of the exclusionary rule as the Fourth Amendment. A sudden switch to a California ground to avoid the impact of federal high court decision invites the successful use of the initiative process to overrule the California decision with its concomitant harm to the prestige, influence, and function of the judicial branch of state government. [Fn. omitted.] The very purpose of the exclusionary rule, to deter unlawful police searches (*Elkins* v. *United States,* 364 U.S. 206, 222 [4 L.Ed.2d 1669, 1680, 80 S.Ct. 1437]; *Linkletter* v. *Walker,* 381 U.S. 618, 637 [14 L.Ed.2d 601, 613, 85 S.Ct. 1731]; Comment, *Standing to Object to an Unreasonable Search and Seizure* (1967) 34 U.Chi.L.Rev. 342, 352-359), requires that there be certainty in the ground rules of search and seizure. The more courts feel free to adopt ground rules unpersuaded by contrary decisions of other courts, the greater the likelihood there is of uncertainty in those ground rules. The uncertainty is mitigated if proper deference is paid United States Supreme Court holdings.

"Thus, something more than personal disagreement by a majority of members of a state court with the decision of the United States high tribunal on search and seizure is required if the persuasion of that court is not to be followed. [Fn. omitted.] Speaking of stare decisis in the context of constitutional law, Professor Philip B. Kurland states: 'Certainly there is or should be something disturbing about the proposition that a watershed in constitutional law is marked not by changes in the constitutional text, as after the Civil War, nor by changes in social conditions that give rise to the problems to which the text is applied, as after the Great Depression. For, if the meaning of the Constitution is as fluid as the personal whims of the Court's membership would make it, it is really no constitution at all. A set of principles setting bounds to government action and allocating governmental authority within those bounds is meaningless if nine Delphic oracles are permitted to divine its meaning and state it anew each time a question is proposed for

resolution.' (Kurland, 1971 Supreme Court Review (U.Chi. Press) pp. 265-266.) For the same reason, the state system should accept the interpretation of the United States Supreme Court of language in the federal Constitution as controlling of our interpretation of essentially identical language in the California Constitution unless conditions peculiar to California support a different meaning. ' "Judges do not represent people, they serve people." ' (*Wells v. Edwards,* 347 F.Supp. 453, 455, citing *Buchanan* v. *Rhodes,* 249 F.Supp. 860, 865.) To do so, they must not represent a political or social point of view; they must serve the rule of law."

Justice Thompson continues: "The intellectual integrity of our Supreme Court is not to be questioned by attributing to it adoption of a principle of decision solely to avoid review by the high court of the United States. Particularly is this true where by purportedly resting its decision upon both federal and California constitutional grounds that purpose would insulate the decision both from United States Supreme Court review and political action short of constitutional amendment to modify the law."

McComb, J., concurred.