[S.F. No. 23399. Dec. 13, 1976.]

CHARLES ALLEN, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party In Interest.

**COUNSEL**

James C. Hooley, Public Defender, Gary N. Wood and Michael G. Gordon, Assistant Public Defenders, for Petitioner.

Engel & Warner and R. Jay Engel as Amici Curiae on behalf of Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg, Timothy A. Reardon and Robert R. Granucci, Deputy Attorneys General, for Respondent and for Real Party in Interest.

Edwin L. Miller, Jr., District Attorney (San Diego), and Peter C. Lehman, Deputy District Attorney, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—Charles Allen seeks a writ of prohibition to restrain respondent court from enforcing an order compelling disclosure of the names of prospective defense witnesses in criminal proceedings pending against him. On the day set for commencement of petitioner's trial respondent court on its own motion ordered both the People and petitioner to disclose the names of their prospective witnesses. The court intended that those names would be read to potential jurors to ascertain whether any of them was acquainted with such prospective witnesses. The court advised counsel that those named would not be described to the jurors as defense or prosecution witnesses. The court also proposed to enjoin the People from contacting any individual named by the defense until the name of such person was otherwise disclosed during the course of the trial. Petitioner refused to reveal the names of his prospective witnesses and sought the instant relief.

Petitioner contends that the disclosure sought by the foregoing order would violate his constitutional right against self-incrimination. He also urges in the alternative that such a procedural innovation as the instant order should be introduced, if at all, only upon the considered judgment of the Legislature. We have concluded that the court erred in ordering disclosure of prospective defense witnesses, and herewith issue our peremptory writ of prohibition.

Preliminarily, we dispose of petitioner's alternative contention that the instant order constitutes a procedural innovation solely within

the discretion of the Legislature. (See *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834, 837 [117 Cal.Rptr. 437, 528 P.2d 45].) In *Reynolds* we confronted a judicially created notice-of-alibi procedure. We concluded that given the intricate state and federal constitutional questions presented it was preferable for this court to refrain from the creation of a comprehensive notice-of-alibi procedure by judicial fiat. Under the circumstances we considered it "far better for this court to pass judgment, if and when necessary, on an integrated legislative document than on our own conditional decree . . . ." (*Id.,* at p. 846.)

The instant review of respondent court's disclosure order does not present the complex federal and state constitutional issues discussed at length in *Reynolds.* On the contrary, we consider our opinion in *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673] to be dispositive of the constitutional issue raised herein. Consequently, we are not compelled to exercise the restraint appropriate in *Reynolds.* We thus reject petitioner's alternative contention.

In *Prudhomme* we concluded that the principal element in determining whether a compelled disclosure should be allowed is "whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief." (*Id.,* at p. 326.) We observed that "in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question cannot possibly have a tendency to incriminate the witness. [Citations.]" (*Id.,* at p. 326.)

The People and amicus curiae, arguing that *Prudhomme* is not in accord with subsequent United States Supreme Court decisions, urge that we reexamine our holding therein.

There are no decisions of the United States Supreme Court in direct conflict with *Prudhomme.* Nevertheless, we are mindful that the trend of the federal high court's decisions on questions of compelled defense disclosure to the prosecution is not wholly consistent with our interpretation of the privilege against self-incrimination. (See *United States* v.

*Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160]; *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893].)[1]

Petitioner's claim of a violation of his privilege against self-incrimination is based on the Fifth and Fourteenth Amendments as well as state constitutional grounds. (Cal. Const., art. I, § 15.)[2] ■ It is established that our Constitution is "a document of independent force" (*People* v. *Disbrow* (1976) 16 Cal.3d 101, 115 [127 Cal.Rptr. 360, 545 P.2d 272]; *People* v. *Brisendine* (1975) 13 Cal.3d 528, 549-550 [119 Cal.Rptr. 315, 531 P.2d 1099]), "whose construction is left to this court, informed but untrammeled by the United States Supreme Court's reading of parallel federal provisions. [Citations.]" (*Reynolds* v. *Superior Court, supra,* 12 Cal.3d 834, 842.)

■ In *Reynolds* we noted that "*Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires." (*Id.,* at p. 843.) We maintain that solicitude and affirm the continued vitality of the stringent standards set forth in *Prudhomme* for the protection of the privilege against self-incrimination as embodied in article I, section 15.

■ The People and amici further contend that the state interest in securing a trial by an unbiased jury and avoiding the possibility of a disrupted trial is sufficient to permit the limited disclosure at time of trial of information which defendant intends to disclose subsequently during the trial. This proposition suggests a balancing test in which the state's interest is weighed against and may offset the accused's interest in the risk of self-incrimination. The *Prudhomme* standard leaves no room for a balancing of interests. ■ That standard plainly proscribes compelled defense disclosures which "*conceivably might lighten* the prosecution's burden of proving its case in chief." (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d 320, 326; italics added.) A disclosure order which fails to meet that standard is constitutionally impermissible.

[1]In *Nobles* the court held that the privilege is personal, and consequently upheld a trial court order compelling defendant to disclose portions of a defense investigator's report of statements taken from prosecution witnesses. In *Williams* the court upheld a Florida notice-of-alibi statute stressing that there would be no constitutional bar to the prosecutor's being granted a continuance following the unanticipated presentation of alibi evidence.

[2]Article I, section 15 provides in pertinent part: "[¶] . . . Persons may not . . . be compelled in a criminal cause to be a witness against themselves . . . ."

■ Our conclusion in this regard should not be construed as demeaning the importance of the state interests. It should be noted, however, that these interests may be served by other measures not likely to infringe upon the privilege against self-incrimination. For example the names of the prospective witnesses might be read to the jurors prior to trial in the absence of counsel of both parties, or alternate jurors may be designated to substitute for any juror whose relationship with a witness is made known when such witness is called during trial. In any case where a relationship is indicated which suggests a possible conflict or bias voir dire would be feasible without the untimely disclosure to the prosecution of the names of prospective defense witnesses.

■ It is of no significance that while *Prudhomme* involved a trial court discovery order requiring disclosure to the prosecution of the names, addresses and expected testimony of defense witnesses, the instant order arose *sua sponte* and was not initiated by a motion for prosecutorial discovery. "[T]he privilege forbids *compelled* disclosures ..." (*id.,* at p. 326, italics added) regardless of the form which the compulsion takes. Thus, the propriety of the court's order must be determined under the test articulated in *Prudhomme*.[3]

■ Applying that test to the order of the court below, we find that it does not clearly appear that the disclosure sought to be compelled cannot possibly have a tendency to incriminate petitioner. The trial judge did not make the careful inquiry which we mandated in *Prudhomme*. Moreover, the fact that the People would be enjoined from contacting defense witnesses until their names were otherwise revealed would not preclude investigation of other matters suggested by the names of the witnesses.[4] In *Prudhomme* we noted: "It requires no great effort or

---

[3]It is also irrelevant that *Prudhomme* dealt with pretrial discovery, while the instant case involves disclosure at trial. In a companion case to *Prudhomme, Bradshaw v. Superior Court* (1970) 2 Cal.3d 332 [85 Cal.Rptr. 136, 466 P.2d 680], we rejected that portion of a discovery order which required defense disclosure of witnesses within 24 hours of expected use. We observed that "If the evidence might possibly incriminate petitioners, they cannot be compelled to disclose it at any time prior to its actual use at trial." (*Id.,* at p. 333, fn. 3.)

[4]For example, if the defense witnesses identified are friends or relatives of an accused, the prosecution can anticipate an alibi defense; if police officers the defense of entrapment can be projected. The trial judge's qualification of the instant order in no way prevents the People from investigating the background of the designated witnesses or questioning their friends or acquaintances. Such investigation may reveal the details of the alibi or other defenses, or may yield other evidence useful to the prosecution including impeachment witnesses, inconsistent statements, and admissible evidence of specific instances of misconduct by the prospective witnesses.

imagination to conceive of a variety of situations wherein the disclosure of the expected testimony of defense witnesses *or even their names and addresses,* could easily provide an essential link in a chain of evidence underlying the prosecution's case in chief." (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d 320, 326; italics added.) The possibility of self-incrimination is in no measure diminished by the omission of addresses in the instant order since names lead directly and easily to addresses.

We conclude, therefore, that the disclosure order of respondent court fails to satisfy the standards established in *Prudhomme* to secure the privilege against self-incrimination as set forth in article I, section 15 of the California Constitution.

Let a peremptory writ of prohibition issue restraining respondent court from enforcing the disclosure order challenged herein.

Tobriner, J., and Mosk, J., concurred.

**SULLIVAN, J.**—I concur under the compulsion of *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673]. I did not agree with the rationale of the majority in *Prudhomme* (see 2 Cal.3d at p. 328), being of the view that such rationale derogates from the constitutional rights of the accused and compels him to provide information before the prosecution has made its case against him. This rationale, which appears to have been based on the state as well as the federal Constitutions (see especially 2 Cal.3d at p. 323, fn. 4 and accompanying text), provides the test for the disposition of the constitutional issue in the present case. While I am in accord with the majority's conclusion against disclosure here, I would prefer that it not be reached by *Prudhomme* standards but I recognize that we are presently bound by that case.

**RICHARDSON, J.**—I respectfully dissent, finding that my position in this case lies at a point roughly midway between that of the majority and that of the dissent. On the one hand, the majority reaffirm the strict standard imposed by *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], and, disregarding recent important federal Supreme Court holdings, rest their decision exclusively upon the self-incrimination clause of the California Constitution. On the other hand, the dissent would overrule *Prudhomme* outright and embrace the

conclusions of the United States Supreme Court in *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893], and *United States* v. *Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160], decisions which interpret the self-incrimination clause of the United States Constitution.

In my view, there are no easy answers to the thorny questions posed herein. Only the most careful balancing of the respective interests of the defendant, the prosecution and the courts will enable us to chart a wise and prudent course between the rigid strictures of *Prudhomme* and the expansive new principles announced in *Williams/Nobles.* I suggest the need for a somewhat more extended analysis of this troublesome and complex issue. Although *Prudhomme* may indeed afford a satisfactory solution, we should test that premise by a serious and thoughtful reconsideration of that case in light of the subsequent and very significant holdings of the United States Supreme Court.

As carefully explained in the dissent, we were persuaded in *Prudhomme* to retreat from the broader implications of *Jones* v. *Superior Court* (1962) 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], by "certain significant developments in the [federal] law since *Jones* . . . ." (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d at p. 323.) Relying upon what then appeared to be the federal trend, we adopted in *Prudhomme* a cautious approach to the question of prosecutorial discovery and determined that all such discovery should be denied if any possible risk of self-incrimination existed. (*Id.,* at p. 327.)

Within a few weeks after *Prudhomme* was filed, the United States Supreme Court decided *Williams* v. *Florida, supra,* 399 U.S. 78, which, by a vote of six to two, upheld Florida's "notice-of-alibi" statute. With respect to prosecutorial discovery in general, the high court in *Williams* noted the state's "obvious and legitimate" interest in protecting itself against an "eleventh-hour defense." "The adversary system of trial," the court then observed, "is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." (*Williams, supra,* at pp. 81-82, fn. omitted [26 L.Ed.2d at pp. 449-450].) Since a defendant has a free choice whether or not to rely upon an alibi defense, advance disclosure of facts concerning that defense cannot be considered "compelled" within the meaning of the Fifth Amendment. At most, the high court reasoned, the pretrial disclosure rule merely accelerates the *timing* of defendant's disclosure of

information he has already chosen to divulge. (*Id.,* at pp. 85-86 [26 L.Ed.2d at pp. 452-453].)

Following *Williams,* the Supreme Court in *United States* v. *Nobles, supra,* 422 U.S. 225, *unanimously* held that a defendant could be required to furnish the prosecution, after completion of the case in chief, with relevant portions of an investigator's report containing statements made by prosecution witnesses. The high court reasoned that the privilege against self-incrimination "is an 'intimate and personal one,' " which " 'adheres basically to the person, not to information that may incriminate him.' " (*Id.,* at p. 233 [45.L.Ed.2d at pp. 150-151].) Since the report at issue contained only statements of third party witnesses, the privilege against self-incrimination was held to be inapplicable.

The "acceleration" rule enunciated in *Williams* and the "personal privilege" reasoning of *Nobles* clearly would permit prosecutorial discovery in certain instances where it is not available under the strict *Prudhomme* standard. Therefore, to the extent that our assessment of federal law determined the outcome in *Prudhomme,* the rationale of the case and indeed its validity have been manifestly and severely undercut. (See *Oregon* v. *Hass* (1975) 420 U.S. 714, 719 [43 L.Ed.2d 570, 575, 95 S.Ct. 1215].) Its federal underpinnings sheared away, *Prudhomme* has now become a rule in search of a reason.

The majority, sensing this structural weakness, believe that the California Constitution supplies a new and sturdy foundation, as it contains (in art. I, § 15) a guarantee against compelled self-incrimination in language substantially identical to that of the Fifth Amendment self-incrimination clause. I adhere to, and reexpress without elaboration, the view that in the absence of strong countervailing circumstances or demonstrable policy reasons, ". . . we should defer to the leadership of the nation's highest court in its interpretation of nearly identical constitutional language, rather than attempt to create a separate echelon of state constitutional interpretations . . . ." (*People* v. *Disbrow* (1976) 16 Cal.3d 101, 119 [127 Cal.Rptr. 360, 545 P.2d 272], dis. opn. of Richardson, J.) For this reason, I am disappointed, but not surprised, that the majority herein flatly reject *Williams* and *Nobles,* and retain *Prudhomme,* without attempting any form of critical analysis or evaluation of the respective merits or implications of either of these cases. I do not think, in blindly repeating the *Prudhomme* rule which we ourselves posited in large part on what we then understood were "developments in

the [federal] law," that we can or should so blithely ignore these very recent decisions of the United States Supreme Court, one of them the unanimous opinion of the highest court in the land.

I am equally disturbed, however, by the cursory treatment which the majority afford our own California law. At the time the *Prudhomme* rule was adopted, we thought we had no reasonable alternative under federal law. It is now clear that alternatives are available; but the majority inexplicably decline even to consider them. They choose simply to lift *Prudhomme* from its crumbling federal foundations and resettle it on the sheltered ground of the California Constitution without considering the arguably nontestimonial nature of the material sought (see *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535]; *Fisher* v. *United States* (1976) 425 U.S. 391 [48 L.Ed.2d 39, 96 S.Ct. 1569]), and without discussion, analysis, policy exposition or indeed anything but an unamplified avowal of "solicitude . . . for the protection of the privilege against self-incrimination as embodied in article I, section 15." (*Ante,* p. 525.) I respectfully suggest that the problem of prosecutorial discovery deserves a thoughtful and deliberative explication.

I do not necessarily advocate that *Prudhomme* be overruled and the federal approach adopted in its entirety. Indeed, we might be persuaded, after a careful consideration of the issues, that the wiser course in this instance is to adhere to a standard more restrictive than the relatively broad sweep of the federal cases. I am not as confident as the *Williams* majority, for instance, that the timing of defense disclosures is necessarily an inconsequential matter, nor am I convinced of the propriety of compelling a defendant, as in *Nobles,* to make pretrial disclosure of information that he does not intend to use at trial. I do, however, advocate a reexamination of a judicial rule which, as the majority interpret it, will effectively bar *all* prosecution discovery. (Today's decision implicitly disapproves even those few appellate cases in which some limited prosecutorial discovery has been permitted; see *People* v. *Wiley* (1976) 57 Cal.App.3d 149 [129 Cal.Rptr. 13]; *People* v. *Ayers* (1975) 51 Cal.App.3d 370 [124 Cal.Rptr. 283].) The possibility of a middle ground should at least be explored, and both the course and the result of that inquiry openly described.

The case before us presents a factual matrix very well adapted to such an analysis. The trial court's order required that petitioner produce, on the date set for trial, a list of defense witnesses. The names disclosed

were then to be intermixed with those of prosecution witnesses and the entire list read to the jury to determine if any disqualifying connection existed between a juror and a witness, thereby avoiding the delay and disruption attendant upon a subsequent discovery of such disqualification. The trial judge offered to couple the initial order with a second one prohibiting the prosecution from contacting any defense witness before that witness was actually called to the stand.

First, it is clear from the record that petitioner advanced no claim that any *actual* and *substantial* possibility of incrimination existed; he challenged the order on the sole ground that it was in effect a form of prosecution discovery and as such was barred by *Prudhomme*. *Prudhomme* places upon the trial judge the burden of "determining that under the facts and circumstances in the case before him it clearly appears that disclosure *cannot possibly* tend to incriminate defendant." (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d at p. 327, italics added.) The task imposed in such a situation upon the trial court is difficult enough at best. It should not have to speculate or hypothesize.

Even if it were necessary to indulge in conjecture, however, I have difficulty finding in the facts of this case any risk of self-incrimination. The effect of the orders was to require petitioner to disclose only facts he intended to make public within a day or two anyway. The prosecution was permitted to garner such new information as might be available about the defense witnesses only after completion of the state's case in chief. Advance disclosure of the names of prospective witnesses could at the most provide the prosecution with the barest indication of potential defenses. For example, a list of witnesses containing the names of petitioner's friends or relatives might suggest an alibi defense. It may, on the other hand, signal only routine character evidence. Names of police officers might suggest that petitioner planned to plead entrapment—an argument so predictable that any prudent prosecutor would have anticipated and prepared for it if the facts surrounding the arrest could possibly support such an interpretation.

It is conceivable, of course, that petitioner had located an eyewitness, as yet unknown to the prosecution, whose testimony was generally favorable to the defense but perhaps equivocal enough to supply the prosecution with a lead or suggest a fruitful line of inquiry. (Petitioner herein made no such assertion.) Even under such unlikely circumstances, compliance with the court order at issue here could hardly have created

any substantial risk. At petitioner's request, the district attorney would have been barred by a parallel order from questioning or even contacting any defense witness who had not yet been called to the stand. Thus the prosecutor would have learned the substance of the alibi, the basis of the entrapment argument, the nature of the eyewitness' evidence, in precisely the same way and at the same time he would have if there had been no disclosure order—from the lips of defense witnesses when testifying on the stand. The prosecution, it is true, would gain a few additional days in which to investigate (as distinguished from questioning) potential defense witnesses, and to accumulate material bearing generally on credibility for impeachment purposes. I see nothing wrong with this. The alternative is either to grant a continuance to the prosecution with the resultant delay or to force the prosecution to proceed without the benefit of potential impeaching evidence. The conduct of a trial is a search for the truth. The state's ultimate burden of producing evidence sufficient for conviction is in no way lightened.

We need not repudiate the basic *Prudhomme* principle to uphold the disclosure order in this case, when even the freest speculation yields little to support any fear of self-incrimination. The majority, however, not only hold that the order in the present case is inconsistent with article I, section 15, but pronounce, by reflex, a rule of unlimited extremity: "The *Prudhomme* standard leaves no room for a balancing of interests." (*Ante,* p. 525.) Under this sweeping, all-encompassing pronouncement, evidently any free-floating hypothetical risk, no matter how remote, how tenuously related to the facts of the particular case, will bar all prosecutorial discovery. This approach is neither wise nor necessary.

We have not previously insisted upon so fixed and rigid a posture. We have permitted some limited weighing of interests even in the context of crucial First Amendment rights when the state's interest is both legitimate and compelling, and the effect on protected activities is comparatively slight. (See *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42, 51-53 [130 Cal.Rptr. 328, 550 P.2d 600]; *Diamond* v. *Bland* (1974) 11 Cal.3d 331, 334 [113 Cal.Rptr. 468, 521 P.2d 460]; *Braxton* v. *Municipal Court* (1973) 10 Cal.3d 138, 148-150 [109 Cal.Rptr. 897, 514 P.2d 697]; *In re Bushman* (1970) 1 Cal.3d 767, 773 [83 Cal.Rptr. 375, 463 P.2d 727]; *L. A. Teachers Union* v. *L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551, 558 [78 Cal.Rptr. 723, 455 P.2d 827].) Moreover, several statutes actually *mandate* at least some balancing of state interests against a defendant's privilege not to incriminate himself:

for example, drivers involved in automobile accidents that cause personal injury or property damage are required to stop and identify themselves, despite the potential danger of subsequent criminal charges (Veh. Code, §§ 20001, 20002; see *California* v. *Byers, supra,* 402 U.S. 424; *In re Carlos A.* (1971) 15 Cal.App.3d 712 [93 Cal.Rptr. 438]; *People* v. *Bammes* (1968) 265 Cal.App.2d 626 [71 Cal.Rptr. 415]); a defendant must give advance notice of an insanity defense (Pen. Code, § 1016); and under certain circumstances a defendant may be compelled to undergo a psychiatric examination, the results of which will be admissible in evidence (Pen. Code, § 1027; see *People* v. *Combes* (1961) 56 Cal.2d 135 [14 Cal.Rptr. 4, 363 P.2d 4]). In addition, in *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45], we expressly left open the possibility that a notice-of-alibi statute, should the Legislature choose to enact one, would withstand a challenge on constitutional grounds. The position staked out by the majority is too extreme.

It may fairly be said that we pioneered the development of liberal rules of discovery by the defendant. (See *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 816-817 [112 Cal.Rptr. 257, 518 P.2d 1353] and cases cited.) It is ironic that the majority now turn their backs upon the modern trend toward even a limited prosecutorial discovery without either full or fair discussion of the alternatives. Sometime ago former Chief Justice Traynor reminded us that since discovery serves ". . . to promote the orderly ascertainment of the truth . . . [t]hat procedure should not be a one-way street." (*Jones* v. *Superior Court, supra,* 58 Cal.2d at p. 60.) The majority now reject this salutary observation, and erect artificial barriers preventing two-way passage on the street. They thereby assure that criminal discovery instead of constituting that "orderly ascertainment of the truth" remains, in effect, the poker game in which one player—the defendant—has "an absolute right always to conceal . . . [his] cards until played." (*Williams* v. *Florida, supra,* 399 U.S. at p. 82 [26 L.Ed.2d at p. 450].)

I would deny the writ.

**CLARK, J.,** Dissenting.—Candor requires we correct the mistake of *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673].

" '*Prudhomme* put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires.' " (*Ante,* p. 525, quoting *Reynolds* v. *Superior Court*

(1974) 12 Cal.3d 834, 843 [117 Cal.Rptr. 437, 528 P.2d 45].) Granted. But that was not its intent. This court clearly intended to conform to the federal constitutional standard it expected the United States Supreme Court to announce in a case then pending before the high court. (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d at pp. 323-325.) This expectation was, of course, disappointed; the high court upheld Florida's notice-of-alibi statute against the claim that it violated the accused's Fifth Amendment privilege against self-incrimination. (*Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893].) Lack of prescience is forgivable; persistence in error is not. By reaffirming *Prudhomme* the majority put this court on record as being more solicitous of the privilege against self-incrimination than the California Constitution—let alone federal law—requires. (See *Jones* v. *Superior Court* (1962) 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213].)

The petitioner in *Prudhomme* sought to enjoin enforcement of a discovery order compelling her attorney to disclose to the People the names, addresses and expected testimony of the witnesses she intended to call at trial. She contended enforcement of the order would violate, inter alia, her privilege against self-incrimination. The People responded that the order was proper under this court's decisions in *Jones* v. *Superior Court, supra,* 58 Cal.2d 56 and *People* v. *Pike* (1969) 71 Cal.2d 595 [78 Cal.Rptr. 672, 455 P.2d 776].

In *Jones* a defendant charged with rape successfully moved for a continuance on the ground that he would present a defense of impotence and wished to marshal supporting evidence. The court then granted the People's motion for discovery of the names and addresses of all medical witnesses who would testify for the defendant and of all doctors who had treated the defendant prior to trial, the reports of these doctors bearing on his claim of impotence, and the X-rays of the injuries alleged to have caused his impotency. The Fifth Amendment not yet having been made applicable to the states by *Malloy* v. *Hogan* (1964) 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489], the defendant's constitutional attack on the discovery order was based on the privilege against self-incrimination set forth in article I, section 13 (now § 15) of the California Constitution. The discovery order was upheld to the extent that it required the defendant to disclose the names and addresses of the witnesses he intended to call, and the medical reports and X-rays he intended to introduce, in support of his defense of impotence. The order compelling the defendant to

disclose this information did not violate his privilege against self-incrimination, this court reasoned, because "[i]t simply requires petitioner to disclose information that he will shortly reveal anyway" at trial. (58 Cal.2d at p. 62.)

The "intent to disclose at trial" rationale articulated in *Jones* later led this court to approve a pretrial discovery order which was unrelated to any particular affirmative defense such as impotence or alibi and which required disclosure of the identities and expected testimony of all defense witnesses—the same information sought in *Prudhomme*. (*People v. Pike* (1969) 71 Cal.2d 595, 605 [78 Cal.Rptr. 672, 455 P.2d 776].)[1]

Why then did this court in *Prudhomme* restrain enforcement of the same sort of discovery order it had approved in *Pike* less than a year before? The answer is that this court, incorrectly, as it turned out, read "certain significant developments in the law since *Jones*" as indicating that discovery orders of the sort involved in *Pike* and *Prudhomme* were violative of the Fifth Amendment privilege against self-incrimination. (*Prudhomme v. Superior Court, supra,* 2 Cal.3d at pp. 323-325.)

Four "significant developments in the law," all of them federal, were given as grounds for this court's change of heart. First, "[t]he privilege [against self-incrimination] is now an element of due process protected against state action by the Fourteenth Amendment, and federal standards govern in state proceedings (*Malloy* v. *Hogan,* 378 U.S. 1 [12 L.Ed.2d 653, 84 S.Ct. 1489])." Second, the United States Supreme Court, by promulgating rule 16(c) of the Federal Rules of Criminal Procedure in 1966 under its rule-making power, provided for limited prosecution discovery of physical evidence, but did not see fit to authorize disclosure

---

[1]The *Prudhomme* court found neither *Jones* nor *Pike* "directly controlling." "*Jones* did not state that a defendant could be required to disclose the names and addresses of *all* defense witnesses, without regard to the subject matter and possible incriminatory nature of their testimony; nor did *Jones* involve an order seeking disclosure of the 'expected testimony' of defense witnesses. *Pike,* in finding no *prejudicial* error in the discovery order involved therein, did not purport to extend permissible discovery beyond the limits previously established in *Jones,* upon which *Pike* exclusively relied." (2 Cal.3d at p. 323.)

The query in *Pike* was stated in terms of prejudicial error. "Was it prejudicial error to require defense counsel to supply names and addresses and expected testimony of defense witnesses?" (71 Cal.2d at p. 605.) However, distinguishing *Pike* on the ground that it found no *prejudicial* error in the order involved therein appears to imply that the order was found to be harmlessly erroneous or, at least, that that question was left open. The contrary appears to be the case. The court stated, without qualification, "Disclosing this information does not interfere with the defendant's right to privacy, freedom from self-incrimination, or the lawyer-client relationship." (*Id.*)

of the names, addresses or expected testimony of defense witnesses. Third, "recent cases in the area of criminal discovery demonstrate increased concern that an accused's Fifth Amendment rights be not overlooked," the one case cited being *Cantillon* v. *Superior Court* (C.D. Cal. 1969) 305 F.Supp. 304 in which the federal district court granted habeas corpus to annul a discovery order for the names of alibi witnesses the defendant intended to call at trial. Fourth, "the United States Supreme Court recently granted certiorari in *Williams* v. *Florida* (Fla. App.) 224 So.2d 406, which had upheld Florida's alibi statute against the claim that it violated the accused's Fifth Amendment rights." (*Prudhomme* v. *Superior Court, supra,* 2 Cal.3d at pp. 323-325.)

Taking these factors in reverse order: to this court's evident surprise, Florida's notice-of-alibi rule was upheld. (*Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893].) Noting the then unbroken line of decisions upholding notice-of-alibi procedures (*id.* at p. 83 [26 L.Ed.2d at pp. 450-451]), and stressing the petitioner's concession that there would be no constitutional bar to the prosecution's being granted a continuance following the unanticipated presentation of alibi evidence, which continuance would allow the prosecution to seek out evidence in rebuttal to the alibi evidence presented (*id.* at pp. 85-86 [26 L.Ed.2d at pp. 452-453]), the high court concluded that the state could constitutionally avoid the necessity of such disruption by requiring pretrial disclosure of an alibi defense and the identities of alibi witnesses. Noting that the majority cited *Jones,* in addition to notice-of-alibi cases, Justice Black in dissent charged that the court had "adopt[ed] in its entirety" the "theory" of *Jones.* (*Id.* at p. 114 [26 L.Ed.2d at p. 484].)

Following the high court's decision in *Williams,* the Court of Appeals for the Ninth Circuit remanded *Cantillon* to the district court in light of that case. (*Cantillon* v. *Superior Court* (9th Cir. 1971) 442 F.2d 1338.)

Then, in 1975, rule 12.1, a notice-of-alibi provision, was added to the Federal Rules of Criminal Procedure.

*Prudhomme*'s remaining ground—that "[t]he privilege [against self-incrimination] is now an element of due process protected against state action by the Fourteenth Amendment, and federal standards govern in state proceedings"—can now be seen to require overruling that decision. (See *Oregon* v. *Hass* (1975) 420 U.S. 714, 719 [43 L.Ed.2d 570, 575, 95 S.Ct. 1215].)

In case after case, the majority of this court, disappointed by what they perceive to be the increasing conservatism of the United States Supreme Court, have shifted ground from the federal to the California Constitution. (See *People* v. *Brisendine* (1975) 13 Cal.3d 528, 553-558 [119 Cal.Rptr. 315, 531 P.2d 1099] (Burke, J., dissenting); *People* v. *Norman* (1975) 14 Cal.3d 929, 940-942 [123 Cal.Rptr. 109, 538 P.2d 237] (Clark, J., dissenting); *People* v. *Longwill* (1975) 14 Cal.3d 943, 952 [123 Cal.Rptr. 297, 538 P.2d 753] (Clark, J., dissenting); *People* v. *Disbrow* (1976) 16 Cal.3d 101, 117, 118-121 [127 Cal.Rptr. 360, 545 P.2d 272] (Richardson, J., dissenting); *People* v. *Maher* (1976) 17 Cal.3d 196, 204-205 [130 Cal.Rptr. 508, 550 P.2d 1044] (Clark, J., dissenting); see also *Gee* v. *Brown* (1975) 14 Cal.3d 571, 576-577 [122 Cal.Rptr. 231, 536 P.2d 1017] (Clark, J., dissenting); *United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902, 914-915 [122 Cal.Rptr. 877, 537 P.2d 1237] (Richardson, J., concurring); *People* v. *Ramey* (1976) 16 Cal.3d 263, 277-281 [127 Cal.Rptr. 629, 545 P.2d 1333] (Clark, J., dissenting).) Previously, this court, like other state courts, rarely considered the state Constitution when a case could be decided under a parallel provision of the federal Constitution. Therefore, the majority have been able to write their "new states' rights"[2] decisions on a relatively clean slate. If their interpretations of the California Constitution find no support in our cases, neither are they contradicted by them. However, in *Jones,* because the Fifth Amendment had not yet been held applicable to the states, the propriety of prosecution discovery was considered under the parallel provision of the California Constitution. (58 Cal.2d at p. 60.) By reaffirming *Prudhomme* in the face of not only *Williams,* but also *Jones,* the majority reveal that their "solicitude" for the privilege against self-incrimination is based on personal conviction, not constitutional principle.

I would deny the writ.

McComb, J., concurred.

---

[2]Mosk, *The New States' Rights* (1976) 10 J.Cal.L. Enforcement 81.