[Crim. No. 17649. First Dist., Div. Three. Jan. 25, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD CURTIS THORNTON, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, B. E. Bergesen III and Patricia Salas Pineda, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Eugene W. Kaster, Gerald E. Granberg and Laurence M. May, Deputy Attorneys General, for Plaintiff and Respondent.

D. Lowell Jensen, District Attorney (Alameda), and John J. Meehan, Assistant District Attorney, as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**FEINBERG, J.—** ██ The issue presented here is what statements, if any, made to defense investigators by defense alibi witnesses can be discovered by the prosecution. We conclude that such discovery constitutes an unconstitutional violation of a defendant's privilege against self-incrimination even if the statements only impeach the testimony of the alibi witnesses and do not directly inculpate the defendant.

Appellant was charged with 14 felonies arising out of robberies alleged to have occurred on December 22, 1976, December 23, 1976, and January 10, 1977. On December 22, 1976, two men entered A. Daigger Company in Richmond and robbed two employees, H. Bartz and Jane Kuchan. Both men were holding guns pointed at the victims. During the robbery one of the men held a gun at the neck of Bartz and ordered Kuchan to lie on the floor. Money was taken from a company cash box as well as from Kuchan's purse. At trial, Kuchan identified appellant as the man holding the gun at Bartz' neck. She testified that the man was clean shaven. At the time of trial appellant had a mustache. Bartz was not able to definitely identify appellant at trial. Testimony also indicated that appellant was the one who rifled the cash box as well as the purse. A latent fingerprint, identified as that of appellant, was found on the cash box.

On December 23, 1976, two men robbed three individuals at an apartment building in San Pablo. During the robbery, one of the robbers held a gun to one victim's head. At trial, victim Anna Walters identified appellant as one of the robbers. Victim Debra Avila thought appellant resembled one of the robbers, but she was not sure. Victim Joe Avila identified appellant as one of the robbers. The jury was unable to reach a verdict as to the four counts involved in the December 23 incident, resulting in a mistrial.

On January 10, 1977, two men robbed William Proffitt, Sr., and his wife, Joyce, at the Gables Motel in Pinole, where they lived. One robber pointed a gun at Proffitt's face from a distance of two to three feet. At trial, Proffitt identified appellant as that armed robber, as did his wife and one of his sons.

Appellant's defense to the incidents on December 22 and 23 was alibi. Five witnesses testified as to appellant's presence at his mother's home in West Hollywood on December 22 and 23, 1976; two of those witnesses also testified that appellant was at a Los Angeles night club on the night of December 22.

At the outset of cross-examination of appellant's first alibi witness, Cornell Isom, the district attorney moved to discover any statements made to defense investigators by all of appellant's alibi witnesses. Over his objection, appellant's counsel was ordered to turn over to the court any investigator's report of statements of the witness Isom. At an *in camera* hearing out of the presence of prosecutor, jury, and the public, the court reviewed the investigator's notes. The court then informed the prosecutor of two statements it felt might impeach Isom's testimony.

The same procedure was followed after each alibi witness testified. While the prosecutor was not given the defense investigator's notes, he was told by the court of statements or omissions in a total of three of the alibi witnesses' statements to the investigator which seemed of possible impeachment value. The prosecutor used those statements in attempting to impeach the alibi witnesses on cross-examination, in connection with two of the witnesses. The statements and the use to which they were put by the prosecution is discussed in more detail, *infra.*

*Can prior statements given by defense alibi witnesses who testified in some manner different from such statements be discovered by the prosecution for the purpose of impeaching the witnesses?*

We hold that such statements cannot be discovered.

In *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], the Supreme Court held that prosecutorial pretrial discovery of the names, addresses, and anticipated testimony of the witnesses the defense intended to call violated the defendant's privilege against self-incrimination under the Fifth Amendment to the United States Constitution binding upon the states through the Fourteenth Amendment.

However, in *Prudhomme,* the court was careful to say that "We do not intend to suggest that the prosecution should be barred from *any* discovery in this, or any other, case. A reasonable demand for factual information which . . . . pertains to a particular defense or defenses, and seeks only that information which defendant intends to introduce at trial, may present no substantial hazards of self-incrimination and therefore justify the trial judge in determining that under the facts and circumstances in the case before him it clearly appears that disclosure cannot possibly tend to incriminate defendant. However, unless those criteria are met, discovery should be refused." (Fns. omitted.) (2 Cal.3d at p. 327.)

Thus, it is fair to say that the issue that confronts us here was not settled by *Prudhomme.*

*Prudhomme* was followed by *Allen* v. *Superior Court* (1976) 18 Cal.3d 520 [134 Cal.Rptr. 774, 557 P.2d 65]. In *Allen,* the trial court on its own motion ordered disclosure by both prosecution and defense of names of prospective witnesses, so that the names could be read to potential jurors to ascertain if any of them was acquainted with such witnesses. The court proposed to enjoin the People from contacting any individual disclosed by the defense until the name of such person was otherwise disclosed during the course of the trial. The defendant refused and sought a writ of prohibition, contending the order would violate his right against self-incrimination.

The *Allen* court reaffirmed *Prudhomme,* and for reasons we need not pursue here, put the constitutional underpinning on the state constitutional privilege against self-incrimination (Cal. Const., art. I, § 15), rather than on federal Fifth and Fourteenth Amendment grounds.

While on its face *Allen* goes no further than *Prudhomme* except to point out that *Prudhomme* applies to disclosure at trial as well as to pretrial

disclosure, it suggests, by dicta, that among the reasons against such disclosure is that it may lead to "other evidence useful to the prosecution including *impeachment witnesses, inconsistent statements,* . . ." (Italics added.) (*Allen* v. *Superior Court, supra,* 18 Cal.3d at p. 526, fn. 4.)

There were at least four reported Court of Appeal opinions between *Prudhomme* and *Allen—People* v. *Wiley* (1976) 57 Cal.App.3d 149 [129 Cal.Rptr. 13]; *People* v. *Ayers* (1975) 51 Cal.App.3d 370 [124 Cal.Rptr. 283]; *People* v. *Chavez* (1973) 33 Cal.App.3d 454 [109 Cal.Rptr. 157]; *People* v. *Bais* (1973) 31 Cal.App.3d 663 [107 Cal.Rptr. 519]. *Allen* cited none.

In *Wiley, supra,* 57 Cal.App.3d 149, a prosecution witness who was the victim testified that she had given a statement to the defense investigator but she had forgotten the contents thereof. The prosecution moved for discovery of the statement to refresh her recollection. The trial court read the statement, concluded that there was nothing in it that might conceivably lighten the burden of the prosecution in proving its case in chief and turned the statement over to the prosecution. The Court of Appeal affirmed. The difference between *Wiley* and the case at bench is obvious. In *Wiley,* unlike here, what the defense was forced to disclose was a pretrial statement it had obtained from the *victim* who was the chief *prosecution* witness. Further, in *Wiley,* there is nothing in the opinion that indicates the prosecution used the statement for any purpose at all other than to refresh the victim's recollection as to what she had told the defense investigator. The defendant argued that this violated his *confrontation* right (not his privilege against self-incrimination) since it permitted the witness to resolve any potential inconsistencies between her trial testimony and prior statements. The argument was sufficiently without merit that it was not addressed by the court; instead, the court dealt with the case in terms of *Prudhomme.*

In *Ayers, supra,* 51 Cal.App.3d 370, the trial court, after screening, turned over to the prosecution notes of a pretrial conversation between a defense witness and a defense investigator.

The appellate court affirmed, pointing out that even if there was error, the discovered statement contained material either exculpatory or irrelevant and, hence, the error could not be prejudicial. It is true that in *Ayers* the court was of the view that there was no error, basing its view upon United States Supreme Court holdings that the privilege against self-

incrimination was "personal to [the] defendant and does not extend to statements of third parties called as witnesses." (*People* v. *Ayers, supra,* 51 Cal.App.3d at p. 379.) To that extent, *Ayers* has been undercut by *Allen* v. *Superior Court, supra,* 18 Cal.3d 520, 524-525, where our high court declined to follow the United States Supreme Court in this aspect.[1]

In *People* v. *Chavez, supra,* 33 Cal.App.3d 454, the trial court granted the prosecution's motion for discovery of pretrial statements taken by the defense investigator of witnesses who testified at trial. Without screening the statements, the trial court ordered the statements turned over to the prosecution. The appellate court held that it was error for the trial court not to have reviewed the statements before making them available to the prosecution but that the error was harmless beyond a reasonable doubt, since what was discovered could not conceivably have lightened the burden of the people in securing a conviction. The court in its discussion states that if the statements contained only *impeaching* material, it would have been appropriate to make that material available to the prosecution because "under our adversary system in the conduct of trials the prosecutor would have been entitled to discover whether the statements contained any matter that would serve to impeach the witness's testimony at the trial. This conclusion necessarily follows because the witness by his appearance on the stand vouches for his testimony then given and thus subjects it to the proper scrutiny of cross-examination and its concomitant right to the presentation of available matter of impeachment in the ascertainment of the truth." (*People* v. *Chavez, supra,* 33 Cal.App.3d at p. 459.) Thus, the *Chavez* court, although the issue was not directly before it, plumps for the view that an impeaching statement by a defense alibi witness in the hands of the defense is discoverable for impeachment purposes by the prosecution if the witness testifies.

We come now to *People* v. *Bais, supra,* 31 Cal.App.3d 663. In *Bais,* following the direct examination of a defense alibi witness, the prosecution moved and was granted discovery for purposes of impeachment of a pretrial statement given by the witness to a defense investigator. The trial court did not "screen" the statement beforehand to make certain that there was nothing therein that might serve to lighten the prosecution's burden of proof. Whereas at trial the witness gave the defendant an alibi by placing him at a location other than at the scene of the crime at the time thereof, he apparently told the defense investigator before trial that

---

[1]Interestingly, Justice Richardson dissenting in *Allen,* believes that the majority opinion impliedly overruled *Wiley, supra,* 57 Cal.App.3d 149, and *Ayers, supra,* 51 Cal.App.3d 370. (*People* v. *Allen, supra,* 18 Cal.3d at p. 530.)

he couldn't remember whether the defendant was at the address testified to at the time in question. On cross-examination by the prosecution, he testified that an investigator had talked to him but that he didn't remember what he had told him, only that he told the investigator what he, the witness, knew. The statement was not received in evidence nor was the defense investigator called as a witness.

The court held that (1) the failure of the trial court to "screen" the statement before it was given to the prosecution was constitutional error under *Prudhomme*; and (2) the error was reversible by *Chapman* standard. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

As we read *Bais*, the reversal was due to the fact that the prosecutor *used* the information contained in the investigator's report to impeach the alibi witness. Since it was a close case, by *Chapman* standard, the error was reversible. If it is proper to secure the prior statement for impeachment, then, though there had been error by the trial court in failing to "screen" the statement, the error should not be reversible since the prosecution had used that which it had a right to secure and use. We conclude that *Bais* implicitly holds that under *Prudhomme*, the prosecution may not discover a prior statement in the hands of a defendant for the purpose of impeaching an alibi witness and we so explicitly hold under the authority of *Prudhomme, Bais* and *Allen*.

■ But this does not end our inquiry. The question that remains is whether the error is reversible. Since the error is of constitutional proportion, whether reversal is required is to be determined by *Chapman, supra*, 386 U.S. 18, standard. (*Wiley, supra*, 57 Cal.App.3d 149; *Chavez, supra*, 33 Cal.App.3d 453; *Bais, supra*, 31 Cal.App.3d 663.)

1. With regard to defense witness Isom, he testified on direct that he phoned appellant's mother's home on December 22 and December 23, and had spoken to appellant on each occasion at a time relevant to the commission of the crimes charged on the 22d and 23d. In addition, he also testified that he had seen appellant in a night club on the evening of the 22d. Isom had previously told the defense investigator only that he talked to appellant on the 23d. When asked on cross-examination by the prosecution why he had not told the investigator about talking to and seeing appellant on the 22d, Isom explained that the investigator had awakened him early one morning to question him and he, Isom, had forgotten about the 22d until some time later.

2. Jones testified that he had talked to appellant on the 22d and 23d and that he was certain of the dates because he kept a diary. Jones, in talking to the defense investigator before trial, had not mentioned a diary. On cross-examination, the prosecutor asked Jones why he hadn't mentioned the diary to the investigator. Jones answered that he hadn't thought it necessary. The diary was never produced.

3. Tompkins testified that she saw appellant at his mother's home on December 23 and that he had a mustache. (There was some evidence from the victims of the December 22 and December 23 robberies that appellant was clean shaven at the time.) Tompkins had told the defense investigator that she didn't remember whether appellant had a mustache on December 23. The prosecutor made no use of this information on cross-examination.

Since appellant was not convicted of the offenses charged on December 23, we need only consider the error in terms of the evidence relating to his conviction for the offenses of December 22. Furthermore, since the prosecution never *used* the information discovered with regard to Tompkins for any purpose, if the discovery as to her were error, it could not possibly be prejudicial and, hence, we need not consider it further.

We are left then with the discovery and use of the omissions in Isom's and Jones' prior statement with regard to the events of December 22.

As to that, one of the victims positively identified appellant as one of the two robbers and most significantly he was identified as the person who handled the cash box and emptied it. A latent fingerprint was lifted from the cash box and it was identified by a fingerprint expert as appellant's beyond any reasonable doubt. The only evidence in the record as to how the fingerprint got on the cash box is the evidence that appellant handled it during the robbery. Considering the strength of the prosecution evidence against appellant vis-á-vis the defense evidence and the cross-examination by the prosecution of Isom and Jones regarding what each had *not* related to the defense investigator, we are convinced beyond a reasonable doubt that the error in the trial court's disclosure ruling did not contribute to the verdicts.

■ Appellant contends, too, that the court erred in failing to give a limiting instruction pursuant to Evidence Code section 1101, subdivision (a), which provides in pertinent part that evidence of a person's character or a trait of his character in the form of evidence of specific instances of

conduct is inadmissible to prove his conduct on a specified occasion. Appellant argues that section 1101, subdivision (a) prohibits the introduction of prior criminal offenses as character evidence to prove subsequent criminal conduct, and by the same reasoning argues that the section should apply when separate offenses are tried together. The same contention was made and rejected in *People* v. *Jackson* (1975) 45 Cal.App.3d 67 [119 Cal.Rptr. 71]. Appellant cites no cases in support of his contention, nor do we find any.

The court properly instructed the jury in the language of CALJIC No. 17.02, advising them that each count was a separate charge and they must decide each count separately on the evidence applicable to it, uninfluenced by their decision as to any other count. The jury's inability to agree as to the crimes alleged to have been committed on December 23, 1976, clearly demonstrates that the jury was in fact considering each count separately and uninfluenced by their decision as to the other counts. The court did not err in failing to give the instruction requested by appellant.

Judgment is affirmed.

White, P. J., concurred.

**SCOTT, J.**—I concur that the judgment should be affirmed, but disagree with the majority holding that the discovery permitted by the court violated the appellant's privilege against self-incrimination.

I would hold that the discovery by the People of statements made to the defense investigators by defense alibi witnesses does not constitute an unconstitutional violation of the defendant's privilege against self-incrimination if the statements only impeach the testimony of the alibi witnesses.

In *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673], the Supreme Court reversed an order requiring a defendant to disclose to the prosecution the names, addresses, and expected testimony of the witnesses the defendant intended to call at trial. The court determined that the United States Constitutional privilege against self-incrimination under the Fifth Amendment, as applied as an element of due process against state actions by the Fourteenth Amendment, precluded such an overbroad order. The court held that in determining whether a particular demand for discovery should be

allowed, the court must decide "whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief" (2 Cal.3d at p. 326). The court limited the prosecution's right to discovery by holding that the privilege against self-incrimination forbids compelled disclosures which might serve as a link in a chain of evidence tending to establish a defendant's guilt. Before a prosecutor's request for discovery will be granted, it must clearly appear to the trial court from a consideration of all the circumstances that the requested disclosure cannot possibly have a tendency to incriminate the defendant (at p. 326).

The *Prudhomme* court then made clear that prosecutorial discovery is permissible in a proper case. "We do not intend to suggest that the prosecution should be barred from *any* discovery in this, or any other, case. A reasonable demand for factual information which, . . . pertains to a particular defense or defenses, and seeks only that information which defendant intends to introduce at trial, may present no substantial hazards of self-incrimination and therefore justify the trial judge in determining that under the facts and circumstances in the case before him it clearly appears that disclosure cannot possibly tend to incriminate defendant. However, unless those criteria are met, discovery should be refused." (2 Cal.3d at p. 327.)[1] The clear words of *Prudhomme* proscribe prosecutorial discovery only when the disclosure could possibly *incriminate* or lead to evidence that would incriminate the defendant.

Since *Prudhomme* a number of Court of Appeal cases and one California Supreme Court case have discussed prosecutorial discovery,

[1]In *Prudhomme* the court states, "Unless the order is confined to information which the defendant intends to disclose at trial, the order could also violate the attorney-client privilege, without regard to its possible incriminatory effect." (2 Cal.3d at p. 327, fn. 10.)

Evidence Code section 954 provides that a client has a privilege to refuse to disclose a confidential communication between client and lawyer. Evidence Code section 952 defines confidential communication as information transmitted between client and lawyer in confidence, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship. The attorney-client privilege does not protect information coming to an attorney from a third person who is not a client unless such person is acting as the client's agent. (*People* v. *Lee* (1970) 3 Cal.App.3d 514, 527 [83 Cal.Rptr. 715].)

The court's suggestion in *Prudhomme* that the attorney-client privilege might be applicable to prevent the requested discovery must be read in light of what the prosecutor requested in that case. The prosecutor sought names, addresses, and the expected testimony of the witnesses the defendant intended to call at trial. If the defendant had given the names of those witnesses to his attorney, that list of names would clearly be a communication between attorney and client and as such could come within the scope of the privilege if the defendant did not intend to disclose those names at trial.

In contrast, here the prosecutor was informed by the trial court of statements made by third persons to the defense attorney's investigator. While a communication between the *client* and that investigator might come within the scope of the attorney-client privilege, the statements made by third persons are not protected.

but none has answered the precise question presented here. In *People* v. *Bais* (1973) 31 Cal.App.3d 663 [107 Cal.Rptr. 519], after the testimony of two alibi witnesses, the prosecutor moved to discover statements made by those witnesses to defense investigators. Over defense objections based on *Prudhomme,* the trial court granted the motion, apparently neither inquiring into the contents of the requested statements nor examining them. On appeal, the defendant's conviction was reversed. Although the discovered statement was not part of the record on appeal, the court concluded that the discovery prompted certain critical questions of the witness on cross-examination, and violated the defendant's Fifth Amendment privilege against compulsory self-incrimination. The Attorney General argued that negating an alibi defense with impeachment evidence was not part of the prosecutor's case in chief and that *Prudhomme* did not ban discovery of evidence to be used in rebuttal. Replying to that argument, the court held that "prosecution discovery must be denied, regardless of when requested, if the trial court determines that the matters to be disclosed will conceivably 'lighten' the 'burden' which the prosecution bears *in bringing about a conviction of the accused.*[2] 'Negating an alibi defense' may very well produce this result, irrespective of the fact that it would be done through the medium of rebuttal evidence. The *Prudhomme* test consequently applies, and bars the discovery ordered here." (*Bais,* 31 Cal.App.3d at p. 672; see also *Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 526 [134 Cal.Rptr. 774, 557 P.2d 65].)

The court then stated that *in addition,* the prospect of "negating an alibi defense" was by no means the only possible consequence of the requested discovery. The court speculated about the possible use the prosecutor might make of the requested documents *other* than for impeachment, and stated, "The possibilities emphasize the requirement that the trial court examine the matters to be disclosed before granting prosecution discovery; the failure of the present trial court to do this was the essential error." (*Bais,* at p. 673.) Implicit in the court's statement is the recognition that solely impeaching statements would be discoverable.

The holding in *Bais* was that the trial court erred in its failure to examine the requested material before granting discovery to the prosecutor. The court did not hold that disclosure of evidence which may

---

[2]Although the *Prudhomme* court used the language "lighten the prosecution's burden" in describing the proscribed discovery, it was clearly meant in the context of evidence incriminating the defendant. This same language, used in *Bais* and other cases hereinafter discussed, must be read as having the same meaning.

impeach an alibi witness will *always* result in impermissibly incriminating the defendant. The majority's reliance on *Bais* in support of its holding is therefore misplaced.

In *People* v. *Chavez* (1973) 33 Cal.App.3d 454 [109 Cal.Rptr. 157], the trial court allowed, over defense objections, prosecutorial discovery of nonalibi witness statements made by certain defense witnesses to a public defender's investigators. Defense counsel had offered to submit the statements to the court for a determination as to what portions were subject to discovery, but that offer was rejected by the court. On appeal, the court held that the trial court erred in not examining the statements before granting prosecutorial discovery. The court concluded, however, that the error was harmless beyond a reasonable doubt under the facts of the case. (*Chavez,* at p. 462.)

Discussing the hazards of not examining the statements before granting the prosecution discovery, the court noted that it was conceivable the statements disclosed could contain matters which could aid the prosecution's case in chief and thus lighten its burden of proof. (*Chavez,* at p. 459.) The court then went on to state that it was equally conceivable the statements could serve to impeach a defense witness. By drawing this distinction, the court by implication approved prosecutorial discovery limited to statements of impeachment value. As to such impeachment evidence, the court stated, "we perceive that under our adversary system in the conduct of trials the prosecutor would have been entitled to discover whether the statements contained any matter that would serve to impeach the witness's testimony at the trial. This conclusion necessarily follows because the witness by his appearance on the stand vouches for his testimony then given and thus subjects it to the proper scrutiny of cross-examination and its concomitant right to the presentation of available matter of impeachment in the ascertainment of the truth." (33 Cal.App.3d at p. 459) The court went on to say: "In view of the possibility existing at the time of its ruling that the statements could contain matters other than those of an impeaching nature, the trial court erred in permitting prosecution discovery without first determining whether such discovery could provide, aside from the impeaching matter, an essential link in a chain of evidence underlying the prosecution's case in chief and thus lighten its burden in bringing about a conviction of defendant." (33 Cal.App.3d at p. 460.)

This language from *Chavez* clearly supports respondent's contention that the prosecutor would have been entitled to discovery statements with

impeachment potential. However, the fundamental error in both *Bais* and *Chavez* was the trial court's failure to examine the requested material prior to granting discovery. Thus, neither case definitively answers the question raised in this case, that is, whether, after examination of the material requested to be discovered, the trial court errs in determining that the evidence which might impeach appellant's alibi witnesses is properly discoverable by the prosecution.

Limited prosecutorial discovery has also been upheld in *People v. Wiley* (1976) 57 Cal.App.3d 149 [129 Cal.Rptr. 13], and in *People v. Ayers* (1975) 51 Cal.App.3d 370 [124 Cal.Rptr. 283]; however, neither case involved circumstances identical to those herein. In *Wiley* the court upheld the trial court's order permitting prosecutorial discovery of statements a victim made to a defense investigator. The trial court had examined the statement and found nothing in it which would lighten the prosecutor's burden. In contrast to the instant case, the prosecutor was seeking the statement of his own witness, in order to refresh her memory. The court concluded that the prosecutor used the discovery to make itself more certain of information it already possessed. (*Wiley,* 57 Cal.App.3d at p. 159.)

In *Ayers* the trial court ordered statements of defense witnesses to be turned over to the court for screening, and indicated that it would disclose to the prosecutor only portions of the statements bearing on the credibility of the witnesses. On appeal, the court upheld the discovery order as the trial court had screened the material and disclosed only material which the appellate court described as exculpatory or irrelevant.

The trial court in this case relied on *Ayers* as authority for its decision that impeachment evidence was discoverable after a proper screening. However, further reliance on *Ayers* is questionable. The appellate court in *Ayers* explicitly stated that the privilege against self-incrimination is personal to the defendant and does not extend to statements of third parties called as witnesses. (*Ayers,* 51 Cal.App.3d at p. 379, citing *United States v. Nobles* (1975) 422 U.S. 225 [45 L.Ed.2d 141, 95 S.Ct. 2160].) Subsequently, the California Supreme Court has recognized an inconsistency between the California interpretation of the privilege against self-incrimination and the trend of the federal high court's decisions, among them *United States v. Nobles.* (*Allen v. Superior Court, supra,* 18 Cal.3d at p. 524.) In *Allen* the court rests its decision on independent state constitutional grounds to " 'put this court on record as being considerably more solicitous of the privilege against self-incrimination than federal law currently requires' " (18 Cal.3d at p. 525).

In *Allen* the trial court, on its own motion, ordered disclosure by both prosecution and defense of names of prospective witnesses, so that the names could be read to potential jurors to ascertain if any of them was acquainted with such witnesses. The court proposed to enjoin the People from contacting any individual disclosed by the defense until the name of such person was otherwise disclosed during the course of the trial. The defendant refused and sought a writ of prohibition, contending the order would violate his right against self-incrimination. The thrust of the People's contention was that *Prudhomme* should be reexamined in light of subsequent United States Supreme Court cases (e.g. *United States* v. *Nobles, supra,* 422 U.S. 225, and *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893]). (*Allen,* 18 Cal.3d at p. 524.) *Allen* rejected this request and reaffirmed *Prudhomme.* The *Prudhomme* standard was reiterated (at p. 525): "That standard plainly proscribes compelled defense disclosures which 'conceivably might lighten the prosecution's burden of proving its case in chief.'" In *Allen* the court noted that "the trend of the federal high court's decisions on questions of compelled defense disclosure to the prosecution is not wholly consistent with our interpretation of the privilege against self-incrimination. [Citations.]" (18 Cal.3d at pp. 524-525.) The court then acknowledged that the California Constitution is a document of independent force, and grounded its holding on California Constitution, article I, section 15.

The *Allen* court did not extend or elaborate upon *Prudhomme* except to make clear that its holding applied to disclosures during trial as well as pretrial disclosures. It characterized the court's order as requiring "the untimely disclosure to the prosecution of the names of prospective defense witnesses," and stated that the trial court "did not make the careful inquiry which we mandated in *Prudhomme.*" (18 Cal.3d at p. 526.) In short, the holding of *Allen* was to reaffirm *Prudhomme* and shift its foundation to "the privilege against self-incrimination as set forth in . . . the California Constitution" (*id.,* at p. 527).

It is possible to distinguish between pretrial statements made by alibi witnesses which might only impeach their trial testimony, and pretrial statements of alibi witnesses which not only impeach their own trial testimony but also incriminate the defendant. For example, if an alibi witness gave a pretrial statement detailing a defendant's culpability and then gave the defendant an alibi at trial, the statement would both impeach the witness and incriminate the defendant. To allow discovery of that inconsistent statement would be to impermissibly lighten the prosecutor's burden, that is, incriminate the defendant. On the other

hand, if the alibi witness gave a pretrial statement to the effect that he did not recall the defendant's whereabouts at the time of the crime and then gave the defendant an alibi at trial, clearly the prior statement would be of value to the prosecution only to cast doubt on the credibility of that witness. Such testimony has the effect of impeaching the witness without incriminating the defendant, as proscribed by *Prudhomme.*

The statements here divulged to the prosecution, after examination by the court as required by *Prudhomme,* do not tend to incriminate appellant, but merely challenged the accuracy of the witnesses' memory and should be discoverable as solely impeaching statements.

I would hold that the court did not err.

A petition for a rehearing was denied February 23, 1979. Scott, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied April 12, 1979. Clark, J., and Richardson, J., were of the opinion that the petition should be granted.